# EXHIBIT A



**Scott J. Trivigno**
Director of Benefits

March 21, 2023

Edward Hayes, Esq.
Edward W. Hayes, P.C.
515 Madison Ave, 31st Floor
New York, NY 10022

> Re: **IATSE Annuity Fund, Sean McClintock, Deceased Participant – Denial of Appeal by Ka-Lai Wong**

Dear Mr. Hayes,

Your appeal on behalf of Ka-Lai Wong was reviewed by the Appeals Subcommittee of the IATSE Annuity Fund ("Fund") at a meeting held on March 16, 2023. Your appeal seeking to have the death benefit due on behalf of Participant Sean McClintock paid to Ms. Wong was denied based on the written rules of the Fund (the "Plan"). The specific reasons for the denial, and Plan provisions on which it was based, are explained below.

<u>The Annuity Plan Will Recognize a Beneficiary Designation Only if It Is Received Prior to the Participant's Death</u>
As was explained in the Fund's letter dated December 20, 2022 denying Ms. Wong's initial claim ("Claim Denial Letter"), the Plan explicitly requires a Participant to designate a beneficiary on the Fund's form and deliver it to the Fund before the Participant's death. As stated in Section 8.08:

> A Participant may designate a Beneficiary on a form provided by the Trustees and <u>delivered to the Trustees before death</u>.

(Emphasis added.)

This rule is explained in the Summary Plan Description (Summary) sent to all participants, including Mr. McClintock. The Summary says:

> When you join the **Plan,** you'll receive a **beneficiary** designation form that you can use to name your **beneficiary**. All **beneficiary** designations (or changes) must be made on **Plan** forms and <u>received by the **Plan** before your death</u>.

Section 11, "Survivor Benefits" (page 13) (Emphasis added).

This rule is also explained on the Fund's beneficiary form, which Ms. Wong asserts Mr. McClintock completed and signed. The form states on the first page of instructions (Number 5):

> The Fund will only recognize beneficiary forms that it actually receives before your death.

1

417 Fifth Avenue • 3rd Floor • New York, NY 10016-2204 • Phone: 212.580.9092, ext. 8302 • Fax: 646.783.7640 • strivigno@iatsenbf.org



**IATSE**
**NATIONAL BENEFIT FUNDS**

Scott J. Trivigno
Director of Benefits

The form includes instructions on how to submit the form to the Fund, noting that it could be sent by fax or mail.

Therefore, Mr. McClintock was advised (through the Summary and beneficiary form) that his beneficiary designation form had to be submitted to the Fund before his death in order to be accepted by the Fund.

The Plan and Summary also provide that absent a valid designated beneficiary, payments will be made to Participant's immediate family members, in the following order:

- to the surviving spouse, if none,
- the surviving child(ren), if none,
- the surviving grandchild(ren), if none,
- the surviving parents, if none,
- the surviving siblings, if none, and
- the estate.

Plan Section 8.08, as amended by Amendment 11, and Summary, page 13. Mr. McClintock was therefore also advised (through the Summary), as to who would receive the death benefit on his behalf if he failed to submit a beneficiary form before his death.

<u>It Is Undisputed that the Fund Did Not Receive Mr. McClintock's Beneficiary Form Until After His Death</u>

As stated in the Fund's Claim Denial Letter, although Mr. McClintock died on July 17, 2022, the Fund did not receive a beneficiary designation form until after his death. The Fund did not receive a beneficiary form purporting to have been signed by Mr. McClintock on June 25, 2022, until you sent it to the Fund with your letter dated October 27, 2022. Ms. Wong confirms that the beneficiary form was never sent to the Fund before Mr. McClintock's death. Ms. Wong's affidavit dated December 7, 2022, submitted with your letter of the same date, swears (in paragraph 12) that

> Sean had also signed <u>but not yet submitted</u> forms which assigned myself as the beneficiary to his I.A.T.S.E Annuity Fund and Pension Fund, attached hereto as Exhibit "A".

(Emphasis added.)

Although the appeal argues that Mr. McClintock had only 22 days (from the date he purportedly signed the form until his death) to submit his beneficiary form; in fact, he could have submitted the form to the Fund at any time. Ms. Wong swears she was dating Mr. McClintock for more than 3 years and that they decided in March 2019 to move in together. (Dec. 7, 2022 Aff., paragraphs 6 and 8.) Mr. McClintock could have submitted the beneficiary form at any point during those three years as he was a participant in the Fund since 2003. As indicated on the form, he could have sent it to the Fund via fax or mail. The Fund would also have accepted it through the participant portal on the Fund's website. Thus Mr. McClintock could easily have sent it to the Fund as soon as he completed it if he wanted to.

2



**Scott J. Trivigno**
Director of Benefits

<u>The Plan Must Be Operated in Accordance with Its Terms</u>
As we previously explained, the Fund is a multiemployer employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA requires the Trustees to administer benefits in accordance with its written Plan. 29 U.S.C. § 1104(a)(1)(D) (plans must be operated "in accordance with the documents and instruments governing them").

The Plan provides that the Fund will pay benefits to the beneficiary designated by a participant in accordance with the Plan rules, and if there is no such beneficiary, to certain surviving family members. The Plan also clearly sets forth how and when a beneficiary can be designated. Therefore, the nature of Mr. McClintock's relationship with Ms. Wong or his parents and whether his failure to deliver the form designating her as beneficiary to the Fund before his death was accidental or intentional are not relevant to the Fund's determination as to who receives his death benefit. The Plan has established rules that make such inquiry irrelevant. The only question is whether the Fund received a valid beneficiary form before his death designating Ms. Wong as beneficiary. It is undisputed that it did not.

The U.S. Supreme Court has affirmed that benefit plans must follow their written rules in determining who is a beneficiary, without regard to external evidence. In <u>Kennedy v. Dupont</u>, 555 U.S. 285 (2009), the Court found that even an explicit waiver of benefits by an ex-spouse in a divorce decree did not overcome a beneficiary designation that was valid under a plan's rules because otherwise "Plan administrators would be forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits'...." 555 U.S. at 302 (internal citations omitted). The Court stated that the claim of the participant's estate in that case (which was disputing the ex-spouse's claim to the death benefit):

> stands or falls by "the terms of the plan," § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents that lets employers "'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" [citations omitted] The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

555 U.S. at 300-301 (internal citations omitted)

In other words, to the extent a beneficiary sues a plan under ERISA (29 USC § 1132(a)(1)(B)) to collect benefits, their claim will be determined based on the language of the plan (and not "external documents" or "intent"). As explained above, the language of Plan here is clear that a

417 Fifth Avenue • 3rd Floor • New York, NY 10016-2204 • Phone: 212.580.9092, ext. 8302 • Fax: 646.783.7640 • strivigno@iatsenbf.org



**IATSE**
**NATIONAL BENEFIT FUNDS**

Scott J. Trivigno
Director of Benefits

beneficiary designation that was never submitted to the Fund before the participant's death is invalid.  Therefore, the Fund has properly determined that no benefit is payable to Ms. Wong since the Fund never received a beneficiary form from Mr. McClintock designating her as beneficiary before his death and that the death benefit is due to his surviving parent(s).

Your affidavit states that "it would have been very easy for I.A.T.S.E. to find out the relationship between Ka-Lai and Sean because they were both union members."  (Mr. Hayes Dec. 7, 2022 Aff., Para 7.)  But the Fund has more than 80,000 participants, represented by a number of different IATSE-affiliated locals.  The Fund does not agree with your statement that it would be easy to find out the relationship between participants merely because they are both union members.  Even if the Fund knew of their relationship, it could not know whether or not Mr. McClintock actually intended to file the beneficiary form before his death, or even if he actually signed it.  But the Fund does not have to know, or find out, that information because it has a clear rule, communicated to participants, which it follows in determining who is entitled to death benefits.

The Fund Is Separate from the Union
Lastly, although you refer to the "union" in your January 23, 2023 letter of appeal and your follow up letter dated March 10, 2023, the Fund and Union are separate entities.  The Fund is operated by a Board of Trustees comprised of an equal number of representatives of the Union (IATSE) and employers that contribute to the Fund. The Summary lists the Union and Employer Trustees separately (page 4).

Your December 7, 2022 affidavit states (in paragraph 14) that the submission of the "transfer documents" (presumably referring to the beneficiary forms) to the Fund was delayed because you were "told by the union office in New York City to file the assignment with the Metropolitan Opera House office, where Sean worked."   The Fund cannot confirm what, if anything, any *union* office told you; but the Fund has no record that it told you to submit a beneficiary form *regarding the Fund* to the Metropolitan Opera.  Moreover, as noted above, the Fund's beneficiary form is clear on its face that it is to be returned to the Fund.  Finally, based on Ms. Wong's affidavit, it appears that your attempts to submit the beneficiary form to the Fund began only after Mr. McClintock's death.

No Death Benefit Is Due from the Pension Fund
As we have previously advised, Mr. McClintock never vested in the IATSE National Pension Fund and thus no death benefit is due from that fund.   To the extent that you are seeking any benefit from the Pension Fund on behalf of Ms. Wong, the Pension Fund denies that claim.

4



**IATSE**
**NATIONAL BENEFIT FUNDS**

Scott J. Trivigno
Director of Benefits

<u>Conclusion and Right to File Suit</u>

Based on the rules of the Plan, your appeal on behalf of Ms. Wong is denied.  A copy of the pages of the Summary and Plan Sections cited above are enclosed for your reference.  A copy of the full Summary has already been provided to you. The full Summary and Plan are also available on the website, www.iatsenbf.org, and by request to the Participant Services Center via email, psc@iatsenbf.org.

Ms. Wong has the right to bring a civil action under ERISA § 502(a). In addition, she will be provided, upon written request and free of charge, with reasonable access to (and copies of) all documents, records, and other information relevant to the claim.

Sincerely,

Scott Trivigno
Director of Benefits

5

and the benefits requested by the Claimant must have been denied in whole or in part, or another adverse benefit determination must have been made.

**Section 8.07        Recovery of Overpayments.**

If for any reason benefit payments are made to any person from the Fund in excess of the amount which is due and payable for any reason (including, without limitation, mistake of fact or law, reliance on any false or fraudulent statements, information or proof submitted by a Claimant, or the continuation of payments after the death of a Participant or Beneficiary entitled to them), the Trustees (or the Plan Administrator or any other designee duly authorized by the Trustees) shall have full authority, in their sole and absolute discretion, to recover the amount of any overpayment (plus interest and costs).  That authority shall include, but not be limited to, (i) the right to reduce benefits payable in the future to the person who received the overpayment, (ii) the right to reduce benefits payable to a surviving Spouse or other Beneficiary who is, or may become, entitled to receive payments under the Plan following the death of that person, and/or (iii) the right to initiate a lawsuit or take such other legal action as may be necessary to recover any overpayment (plus interest and costs) against the person who received the overpayment, or such person's estate.

**Section 8.08        Beneficiary Designation.**

A Participant may designate a Beneficiary on a form provided by the Trustees and delivered to the Trustees before death.  A Participant may change his Beneficiary (without the consent of the Beneficiary) in the same manner.  However, for married Participants, survivor benefits will be paid in accordance with Sections 7.02(e) and 7.07 hereof.

When there is more than one person within the classes hereinafter designated entitled to the benefits as herein provided, such benefits shall be shared by such persons in equal amounts.  If no Beneficiary has been designated or no Beneficiary has survived the Participant or Annuitant, or if the designated Beneficiary survives the Participant or Annuitant but dies prior to receiving the full or remaining amount of the Account Balance, distribution shall be made in the order of priority specified, to the person or persons falling within the following named classes:  first, the surviving Spouse of the Participant or Annuitant; second, the surviving child or children (natural or legally adopted) of the Participant or Annuitant; and third, the surviving parent or parents of the Participant or Annuitant.  If no Spouse, children or parents survive the Participant or Annuitant, distribution shall be made to the deceased Participant's or Annuitant's executor or administrator.

**Section 8.09        Incompetence or Incapacity of an Employee, Annuitant or Beneficiary.**

In the event it is determined that any Participant, Annuitant, or Beneficiary is unable to care for his affairs because of mental or physical incapacity, any benefit due such Participant, Annuitant or Beneficiary, may be applied in the discretion of the Trustees for his maintenance and support, or the maintenance and support of his Spouse or minor children, unless claim therefor has been made by his legal guardian, committee, or legal representative.

34





KEEP YOUR
RETIREMENT
IN BALANCE

THE I.A.T.S.E. ANNUITY FUND
SUMMARY PLAN DESCRIPTION

# THE I.A.T.S.E. ANNUITY FUND

417 Fifth Avenue, Third Floor, New York, New York 10016-2204
(212) 580-9092
(800) 456-3863
Fax: (212) 787-3607

## BOARD OF TRUSTEES

| UNION TRUSTEES | EMPLOYER TRUSTEES |
|---|---|
| Matthew D. Loeb (Co-Chair) | Christopher Brockmeyer (Co-Chair) |
| Brian J. Lawlor | Carol A. Lombardini, Esq. |
| James B. Wood | Paul Libin |
| Daniel E. DiTolla | Robert W. Johnson |
| Patricia A. White | Hank Lachmund |
| Michael F. Miller, Jr. | Jay Barnett |
| Joanne M. Sanders | |

**EXECUTIVE DIRECTOR**
Anne J. Zeisler

**FUND COUNSEL**
Spivak Lipton LLP and Proskauer Rose LLP

**FUND CONSULTANT**
The Segal Company



January 1, 2022

Dear Participant,

We are pleased to furnish you with this booklet containing an explanation of the I.A.T.S.E. Annuity Fund. We urge you to read this booklet carefully so that you will be fully aware of the conditions for eligibility and the benefits to which you may be entitled.

We also urge you to share the booklet with your family. Keep this booklet in a safe place. If you lose it, you may request another copy from the Fund Office or download it from the Fund's website by logging on to www.iatsenbf.org.

Sincerely yours,

The Board of Trustees
417 Fifth Avenue, Third Floor, New York, New York 10016-2204
(212) 580-9092
(800) 456-FUND (outside New York State)

2

| Trustees | The following is a list of the **Plan's** Trustees and their principal place of business: |
|---|---|

**Union Trustees**

Matthew D. Loeb (Co-Chair)
I.A.T.S.E., International President
207 W 25th St, 4th Floor
New York, New York 10001

Brian J. Lawlor
I.A.T.S.E., International Representative
207 W 25th St, 4th Floor
New York, New York 10001

James B. Wood
I.A.T.S.E., General Secretary-Treasurer
207 W 25th St, 4th Floor
New York, New York 10001

Daniel E. DiTolla
I.A.T.S.E., International Vice-President
207 W 25th St, 4th Floor
New York, New York 10001

Patricia A. White
I.A.T.S.E Representative
207 W 25th St, 4th Floor
New York, New York 10001

Michael F. Miller, Jr.
I.A.T.S.E. International Vice President
Director, Motion Picture and Television Production
2210 W Olive Ave
Burbank, CA 91506

Joanne M. Sanders
I.A.T.S.E International Vice President/Department
Director, Tradeshow
207 W 25th St, 4th Floor
New York, New York 10001

**Employer Trustees**

Christopher Brockmeyer (Co-Chair)
Director of Employee Benefit Funds
The Broadway League
729 Seventh Avenue, 5th Floor
New York, New York 10019

Carol A. Lombardini, Esquire
President, Alliance of Motion Picture &
Television Producers (AMPTP)
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-5885

Paul Libin
Vice President and Producing Director
Circle in the Square Theatre
1633 Broadway
New York, New York 10019

Robert W. Johnson
Senior Vice President, Labor Relations
Walt Disney Pictures
500 South Buena Vista Street
Burbank, CA 91521-7468

Hank Lachmund
Exec. Vice-President, Industrial Relations
Warner Bros. Entertainment
4000 Warner Blvd., Bldg. 137, Room 1009
Burbank, CA 91522

Jay Barnett
Vice President, Labor Relations West Coast
CBS Studios
4024 Radford Avenue
Studio City, CA 91604

| Contributing Employers | A complete listing of the **contributing employers** may be obtained by written request to the **Plan Administrator**. |
|---|---|
| Agent for Legal Process | In the event of a legal dispute involving the **Plan**, legal documents may be served on:<br><br>Anne J. Zeisler, Executive Director<br>I.A.T.S.E. Annuity Fund<br>417 Fifth Avenue, Third Floor<br>New York, New York<br>10016-2204<br><br>Legal process may also be served on any individual **Trustee** at the Fund Office address. |
| Plan Fiduciaries | The **Plan's** named fiduciaries are the **Trustees**. |

4

## 9. TAX RULES AFFECTING PLAN PAYMENTS

### Mandatory 20% Withholding

Whenever you receive a **distribution** from the **Plan**, other than periodic **annuity** payments and there is no direct rollover to an **IRA** or an **eligible retirement plan**, the **IRS** requires your **Plan Administrator** to withhold 20% of the taxable amount.

This 20% withholding is not a tax; it is credited to any future federal income tax that you may owe. This amount will automatically be deducted from the amount paid to you.

> **Example:**
>
> Sally Kee is 65 and decides to leave **covered employment** and elects a personal payment of her **account** balance.
>
> | | |
> |---|---|
> | Her account balance is: | $10,000 |
> | <u>Less 20% withholding</u> | <u>-$2,000</u> |
> | Total cash received | $8,000 |

### 10% Additional Penalty Tax

Any payment of taxable money from your **account** is generally subject to an additional 10% federal tax penalty if you take it out "early," which is defined as:

- Before you reach the age of 59½, and
- For reasons other than permanent disability or death.

This penalty tax does **NOT** apply to the following types of payments:

- Any **distribution** made when you terminate employment at or after age 55.
- Any **distribution** made to someone other than you under the terms of a qualified **domestic relations order**, which is a court order creating or recognizing an alternate payee's (e.g., spouse, former spouse, child) right to part or all of your **Plan** benefits. See Section 12, **Events That May Affect Your Account**, for more information about **domestic relations orders**.
- Any corrective **distributions** necessary to comply with **IRS** contribution limits.

If you have questions about tax rules affecting **Plan** payments, please contact your tax advisor.

## 10. SPECIAL TAX NOTICE FOR PARTICIPANTS RESIDING IN PUERTO RICO OR WHO PERFORMED WORK IN PUERTO RICO:

The **Plan** is qualified under the tax laws of both the United States and Puerto Rico ("dual qualified"). Contributions based on work performed in Puerto Rico, and any earnings on such contributions, are subject to Puerto Rico tax reporting and withholding. Since the **Plan** is dually-qualified and is funded through a trust fund located in the U.S., a portion of your benefits from the **Plan** also has to be reported to the **Internal Revenue Service ("IRS")** as U.S. taxable income. The U.S. taxable portion of your benefits is determined by the **Plan** based on any contributions for work performed in the U.S. outside of Puerto Rico, and all investment earnings on all contributions.

If you receive a **distribution** of contributions for work in Puerto Rico (or earnings on such contributions), the **Plan** will report those benefits it paid to each year to the Puerto Rico taxing authority (Hacienda). Since the **Plan** is dually-qualified and funded in the U.S., the **Plan** will also report the entire payment to **IRS** and identify the portion of your benefits that is U.S. taxable income to the **IRS**. While your benefits attributable to work in Puerto Rico from the **Annuity Fund** have to be reported to both Hacienda and the **IRS**, and the earnings thereon are subject to both Puerto Rico and U.S. withholding, this does not necessarily mean that you will end up having to pay both Puerto Rico and U.S. income taxes on such benefits. Depending on your particular circumstances, you may be able to claim a foreign tax credit (from either the Hacienda or IRS) for the taxes paid on income subject to both U.S. and Puerto withholding.

For more information you can request a copy of the "Summary of Material Modifications, Puerto Rico and United States Income Taxation of Benefits of Puerto Rico Participants." However, the **Plan** cannot provide you with any tax advice. For such advice you should consult with a professional tax advisor.

## 11. SURVIVOR BENEFITS

Survivor benefits are an important part of the financial security and peace of mind this **Plan** provides. In this section, we discuss these benefits in more detail as well as the decisions you'll need to make about them before you retire.

### Choosing a Beneficiary

When you join the **Plan**, you'll receive a **beneficiary** designation form that you can use to name your **beneficiary**. All beneficiary designations (or changes) must be made on **Plan** forms and received by the **Plan** before your death.

If you die before complete **distribution** of your benefits without designating a **beneficiary** or if your beneficiary predeceases you or dies before receiving the entire death benefit on your behalf, your **beneficiary** will be the persons in the following order (if living at the time payment is made):

- Your surviving **spouse**, or if none;
- Your natural and adopted children in equal shares, or if none;
- Your parents in equal shares, or if none;
- Your estate.

Generally, the law requires that your spouse be the beneficiary of at least 50% of your **account** balance. You may name someone other than your **spouse** as **beneficiary** for more than 50% of your **account** at any time, provided that your spouse consents to this change in writing, such consent designates a **beneficiary** (or form of benefits) which may not be changed without spousal consent (or the consent expressly permits changes without any further consent by the spouse), and the consent is notarized or witnessed by a **Plan** representative in accordance with **Plan** rules.

13