UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KA-LAI WONG,

Plaintiff,

-v-

I.A.T.S.E., as *Plan Administrator of the I.A.T.S.E. Annuity and Pension Funds*,

Defendant.

23 Civ. 7629 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In July 2022, plaintiff Ka-Lai Wong's fiancé, Sean McClintock, unexpectedly passed away at age 54. A renowned audio engineer, McClintock was a member of the International Alliance of Theatrical Stage Employees ("IATSE") and a participant in its employee benefit plan (the "Plan"). Before his death, McClintock had signed—but had not submitted—a form designating Wong as his sole beneficiary under the Plan. Because the Plan's rules only recognize beneficiary forms received before a participant's death, defendant IATSE Annuity Fund (the "Fund") informed Wong that McClintock's benefits would go to his next of kin—his parents—and not to her.

Wong here sues the Fund under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, alleging that it breached its fiduciary duties in administering the Plan. Dkt. 24 ("Second Amended Complaint" or "SAC") ¶¶ 42–49. Pending now is the Fund's motion to dismiss Wong's SAC for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). Although Wong is blameless and her circumstances are undeniably sympathetic, she has failed to plead a cognizable ERISA claim. The Court thus must grant the motion to dismiss the SAC.

1

I.      **Background**

     A.      **Factual Background**[1]

          **1.      The Parties**

Wong resides in Bay Ridge, Brooklyn.  SAC ¶ 2.

     IATSE Annuity Fund operates IATSE's employee benefit plan, established under various collective bargaining agreements.  *Id.* ¶¶ 9, 13.  The Fund is based in New York.  *Id.* ¶ 12.

          **2.      McClintock and Wong's Relationship**

     From 2019 until his death in 2022, McClintock lived with Wong and Wong's daughter in his home in Hellertown, Pennsylvania.  *Id.*, Ex. 1 at 3.  McClintock and Wong were engaged to be married.  SAC ¶ 3.  McClintock was a renowned audio engineer in New York City, *id.* ¶¶ 15–16, and a long-time member of IATSE and participant in its employee benefit plan, *id.* ¶ 17; *see also id.*, Ex. 1 at 3 (dating McClintock's participation in the Fund to 2002).

     On July 17, 2022, McClintock, age 54, died unexpectedly.  SAC ¶ 21.  Three weeks earlier, on June 25, 2022, McClintock had signed a form designating Wong as his sole beneficiary under the Plan.  *Id.* ¶¶ 20, 34.  The form's instructions provided as follows:

---

[1] The Court draws the facts in this decision from the SAC, Dkt. 24, and the exhibits incorporated therein, *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  These include those attached to Sara Corello's declaration in support of her appeal of the Fund's motion to dismiss, Dkt. 27 ("Corello Decl.").  For the purpose of resolving the Fund's motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the SAC as true and draws all reasonable inferences in Wong's favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Although Wong does not include the Fund's denial of her appeal or the Plan's terms in her SAC, both documents are "integral" to her claims, and thus properly considered on a motion to dismiss.  *See, e.g., Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265 (JPO), 2017 WL 4023350, at \*3 (S.D.N.Y. Sept. 11, 2017) ("Courts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss." (citation omitted)).

Return all pages of the [form] to I.A.T.S.E. Annuity Fund, 417 Fifth Avenue, 3rd Floor, New York, NY 10016. The Fund will only recognize beneficiary forms that it actually receives before your death.

*Id.*, Ex. 1 at 10. The Fund did not inform participants that the form could also be filed online. SAC ¶ 35. McClintock did not submit the form before his death. *Id.* ¶ 37.

On October 27, 2022, Wong filed a claim with the Fund for McClintock's benefits, attaching the signed beneficiary designation form. *See* Corello Decl., Ex. 1 at 3. On December 20, 2022, the Fund denied Wong's initial claim to receive McClintock's benefits, on the basis that the form was not submitted before his death. *See id.* at 2.

### 3.    Wong's Appeal to the Fund

On January 23, 2023, Wong, represented by counsel, filed an appeal with the Fund. SAC, Ex. 1 at 1–2. "As it stands, without a named beneficiary on file," Wong's attorney wrote, McClintock's "benefits are to be assigned to his parents in accordance with the Summary Plan Description." *Id.* at 1. Such a result would be inequitable, he argued, because "it is clear" from various text messages, and the completed beneficiary designation form, that McClintock "wanted [Wong] to inherit his annuity benefits," not his parents, with whom he was estranged. *Id.* at 1–2. Wong's attorney argued that the Plan's requirement that "[a]ll beneficiary designations (or changes) must be made on Plan forms and received by the Plan before [a participant's] death" is "unreasonable" and "would be unenforceable in court." *Id.* at 2.

On March 21, 2023, the Fund denied Wong's appeal. The Fund explained that "the Plan explicitly requires a Participant to designate a beneficiary on the Fund's form and deliver it to the Fund before the Participant's death." Corello Decl., Ex. 1 at 2. That requirement, the Fund stated, is set out in Section 8.08 of the Plan's rules, in the Summary Plan Description "sent to all participants," and in "the Fund's beneficiary form" itself. *Id.* "Therefore," the Fund stated, "Mr.

McClintock was advised (through the Summary and beneficiary form) that his beneficiary

designation form had to be submitted to the Fund before his death in order to be accepted by the

Fund." *Id.* at 2.  Because it is "[u]ndisputed" that the Fund did not receive McClintock's form

before his death, the Fund concluded, it was obliged to pay McClintock's benefits to his parents,

in accordance with the Plan's rules as to participants who fail to "designate[]" a beneficiary. *Id.*

at 2–3.

###       4.       **This Lawsuit**

In this lawsuit, Wong brings a single claim against the Fund, alleging that it breached its

fiduciary duties under ERISA § 502(a)(3).  *See* SAC ¶¶ 42–49.  The SAC alleges that the Fund

has violated (1) its duty of loyalty, by failing to act "for the exclusive purpose of providing

benefits to participants and their beneficiaries and defraying reasonable expenses for

administering the plan," *id.* ¶ 43, (2) its duty of care, by failing to act "with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims," *id.* ¶ 44, and (3) its duty to act "in accordance with the documents

and instruments governing the plan," *id.* ¶ 45.  These claims are based on the Fund's alleged

failure to "deploy electronic beneficiary designation processes, use email as a way to receive

documents, review designations when not completed, solicit new designations upon life events, .

. . maintain current and accurate beneficiary designations, . . . [or] educat[e] its participants,

including Mr. McClintock, of how they might use online portals to send [the Fund] beneficiary

forms." *Id.* ¶ 47.

### B.    Procedural Background

On July 31, 2023, Wong brought this case in New York State Supreme Court.  Dkt. 1, Ex. 1. ("Compl.").  On August 28, 2023, the Fund removed the case to this Court, asserting federal-question jurisdiction.  Dkt. 1.  On September 5, 2023, the Fund moved to dismiss Wong's Complaint.  Dkt. 5.  On September 6, 2023, the Court directed Wong to either amend the Complaint or oppose the motion to dismiss by September 26, 2023, Dkt. 11, a deadline later extended to October 17, 2023, Dkt. 17.  On October 17, 2023, Wong filed her First Amended Complaint.  Dkt. 20.  On October 30, 2023, with the Fund's consent, Wong filed the SAC, the operative complaint today.  Dkt. 24.  On November 20, 2023, the Fund moved to dismiss the SAC, Dkt. 25, and filed a memorandum of law in support, Dkt. 26 ("Def. Br.").  On December 22, 2023, Wong opposed the motion.  Dkt. 30 ("Pl. Br.").  On January 11, 2024, the Fund filed a reply.  Dkt. 31 ("Def. Reply Br.").

## II.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### III.    Discussion

Wong alleges that the Fund has breached three fiduciary duties: (1) of loyalty; (2) of care; and (3) to act in accordance with plan documents. The Court considers each duty in turn.

#### A.    Duty of Loyalty

ERISA's duty of loyalty arises under ERISA § 404(a)(1)(A). It charges fiduciaries with "discharg[ing] [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). An ERISA fiduciary must therefore act with an "eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (Friendly, J.).

To plead a violation of the duty of loyalty, a plaintiff must plausibly allege that the fund's "operative motive was to further its own interests" or the interests of a third party. *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 6 (1st Cir. 2018); *see also, e.g.*, *Donovan*, 680 F.2d at 275 (focusing on "the trustees['] . . . motive" for the challenged action). It is thus not sufficient merely to allege generally "that a defendant failed to act for the exclusive purpose of providing benefits to participants." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17 Civ. 6685 (ALC), 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019). Instead, a plaintiff must allege facts from which an inference could be drawn "that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Id.* (emphasis in original); *see also Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (describing as "the most fundamental duty of a trustee" his obligation to display

"complete loyalty to the interests of the beneficiary and . . . exclude all selfish interest and all consideration of the interests of third persons" (citation omitted)).

As the Fund argues, the SAC falls far short of this standard. Its general averments that the Fund "fail[ed] to deploy electronic beneficiary designation processes" or sufficiently to "educat[e] its participants," SAC ¶ 47, do not sustain the inference that the Fund acted impermissibly to further its own interests or those of third parties. *See, e.g., Ferguson*, 2019 WL 4466714, at *4 (breach of duty of loyalty not plausibly pled where complaint was "devoid of factual allegations supporting purposeful action by the [defendants] to benefit themselves or a third-party"); *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (breach of duty of loyalty not plausibly pled where complaint failed to "support an inference that defendants' actions were for the purpose of providing benefits to themselves or someone else and did not simply have that incidental effect"); *see also Dover v. Yanfeng U.S. Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 690 (E.D. Mich. 2021) (breach of duty of loyalty not plausibly pled where complaint's allegations failed to "address the *intent* behind" the trustees' actions (emphasis in original)). The SAC does not include any allegations whatsoever that could support an inference as to "the trustees['] . . . motive," *Donovan*, 680 F.2d at 275, despite the fact that their intent is dispositive as to this claim, *see, e.g., Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018) ("to be loyal is to possess a certain state of mind" and thus a claim as to an ERISA fiduciary's duty of loyalty focuses on "motive"). Even accepting Wong's premise that it would assist participants for the Fund to "prepare and maintain beneficiary designation form[s] that are easy to use and submit," Pl. Br. at 8, the SAC does not plead that the Fund's failure to modernize the form in these ways "further[ed] its own interests"

or those of a third party. *Ellis*, 883 F.3d at 6. Without well-pled allegations going to the Fund's intent, the Court must dismiss the claim that the Fund violated its duty of loyalty.

**B.      Duty of Care**

Under ERISA § 404(a)(1)(B), a fiduciary must use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty of prudence mandated by § 1104(a)(1)(B) "is measured according to the objective prudent person standard developed in the common law of trusts." *La Scala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) (quotation marks omitted). "Under that common-law standard, and consistent with ERISA's instruction that fiduciaries act in a prudent manner 'under the circumstances then prevailing,' courts judge a fiduciary's actions based upon information available to the fiduciary at the time . . . and not from the vantage point of hindsight." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (cleaned up). Relevant here, one action that fiduciaries must take is to "provide 'complete and accurate' information to plan members and beneficiaries about their benefits." *DeRogatis v. Bd. of Trs. of the Welfare Fund of the Int'l Union of Operating Eng'rs Local 15*, 904 F.3d 174, 179 (2d Cir. 2018) (quoting *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997)).

The SAC fails to plead a misrepresentation or material omission on the part of the Fund. At most, it alleges that the Fund could have done more to "educat[e] its participants . . . [as to] how they might use online portals to send [the Fund] beneficiary forms." SAC ¶ 47. But "ERISA's fiduciary duty of care requires prudence, not prescience." *Pension Ben. Guar. Corp.*, 712 F.3d at 716 (cleaned up). Where courts have found a breach of a fund's duty of care, such

has been "based on a combination of unclear written plan materials and misrepresentations made by plan agents." *DeRogatis*, 904 F.3d at 179. "Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances." *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 207 (1st Cir. 2002); *see also Estate of Becker*, 120 F.3d at 8–9. Here, the Fund's materials were crystal clear. The form itself notified McClintock that "[t]he Fund will only recognize beneficiary forms that it actually receives before your death" and provided him with the relevant mailing address. SAC, Ex. 1 at 10. The form did not misinform McClintock.

That the form did not *also* tell McClintock that he could *alternatively* submit the form online, SAC ¶¶ 35, 47, does not render it misleading. *See, e.g., Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 90 (2d Cir. 2017) (fund's "failure to clarify" certain fund processes not misleading because its "enrollment materials accurately disclosed" the bottom-line cost); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102–03 (2d Cir. 2005) (fund's failure to disclose its cost-reduction strategies not misleading because it had "no duty to disclose to plan participants information additional to that [specifically] required by ERISA"); *Bernstein v. Metro. Life Ins. Co.*, 453 F. Supp. 2d 554, 559 (D. Conn. 2006) (fund's failure to inform a participant of his failure to pay outstanding premiums not misleading because ERISA does not create a duty to "investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees" (citation omitted)).[2] As the Supreme Court recently explained, "the

---

[2] Nor is the Plan's requirement that a participant mail the forms akin to a requirement that documents be delivered "by carrier pigeon or Western Telegram." Pl. Br. at 11. Even assuming *arguendo* Wong's argument that a plan should "use current technology" to communicate with its participants, *id.*, Wong's hyperbolic analogy of the United States Postal Service to these archaic delivery modes is not a fair one. *Cf., e.g., In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir.

circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).  Although in retrospect it would have been preferable had the form alerted McClintock to the Fund's online portal, that judgment is not properly made from the "vantage point of hindsight."  *Pension Ben. Guar. Corp.*, 712 F.3d at 716.  The relevant question is whether the SAC "alleges *nonconclusory* factual content raising a *plausible* inference of misconduct."  *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (emphasis in original) (cleaned up).  Because the SAC lacks factual allegations that the Fund's "written plan materials" were in any way "unclear," or that "plan agents" made "misrepresentations" when asked about particular details (such as whether a form could be submitted online), *DeRogatis*, 904 F.3d at 179, it fails to plausibly plead a breach of the Fund's duty of care.

## C.  Duty to Act in Accordance with Plan Documents

Under ERISA § 404(a)(1)(D), a fiduciary must "discharge his duties . . . in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D).  Such a claim "stands or falls by 'the terms of the plan.'"  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1132(a)(1)(B)).  This statutory provision obliges fiduciaries to "establish a uniform administrative scheme" with "a set of standard procedures to guide processing of claims and disbursement of benefits."  *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001).

The SAC fails to plead a violation of the Fund's duty to act in accordance with Plan rules. On the contrary, Wong concedes both that the Fund adhered to its Plan's rules, in that "the

---

2016) (noting that it is a "common and practical requirement" that "an opt out be signed by the class member" and sent by mail "to ensure . . . express consent" to opt out of a class settlement).

written rules of the Fund require[] beneficiary forms to be received before a participant's death," and that ERISA *required* the Fund to do so, notwithstanding the possibility of "harsh results." Pl. Br. at 10. These concessions foreclose the SAC's claim under ERISA § 404(a)(1)(D). As the Supreme Court has explained, the requirement that fiduciaries follow plan rules "forecloses" any inquiry "into nice expressions of intent," thus eliminating "the folderol essential under-less certain rules." *Kennedy*, 555 U.S. at 300–01 (cleaned up). Because the SAC does not allege that the Fund deviated from its rules, it fails to plausibly plead a breach of the Fund's duty to act in accordance with plan documents.

In sum, because the SAC does not plausibly plead a breach of any of the Fund's fiduciary duties, the SAC does not state a claim.[3]

## CONCLUSION

For the foregoing reasons, the Court grants the Fund's motion to dismiss Wong's SAC with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor of the Fund, to terminate all pending motions, and to close this case.

---

[3] Wong has not sought leave to file a Third Amended Complaint in the event the SAC is dismissed. Because the Court notified Wong before filing the SAC that no further opportunities to amend would ordinarily be afforded, and because there is no reason to assume that amendment could cure the pleading defects identified here, the Court dismisses her SAC with prejudice and closes this case. *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (district court did not abuse its discretion in closing case "when leave to amend has not been sought"); *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 n.3 (2d Cir. 1997) (district court did not abuse its discretion in closing case when plaintiffs had "already had ample time to amend the complaint" and had not indicated "how further amendment would cure the deficiencies in pleading"); *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (district court did not abuse its discretion in closing case when "plaintiffs made no attempt to seek leave to amend"); *see also Ritchie Capital Mgmt., L.L.C. v. General Elec. Capital Corp.*, 821 F.3d 349, 352 (2d Cir. 2016) (district court did not abuse its discretion in closing case when its individual rules expressly provided that plaintiff had 21 days to amend its complaint in response to defendant's motion to dismiss and that "no further opportunity to amend will ordinarily be granted").

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 1, 2024
      New York, New York